IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRESCIT MORTGAGE CAPITAL, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>EMERALD BAY APARTMENTS, LLC, a Washington limited liability company, and CHRISTOPHER S. ROBISON, an individual,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT** |

Plaintiff Crescit Mortgage Capital, LLC, for its complaint against Defendants Emerald Bay Apartments, LLC, and Christopher S. Robison, alleges as follows:

**PRELIMINARY STATEMENT**

1. Defendants Emerald Bay Apartments, LLC ("Emerald Bay") and Christopher S. Robison ("Robison") entered into a loan application agreement with Plaintiff Crescit Mortgage Capital, LLC ("Crescit"), for a $14 million mortgage loan on an apartment complex located in Tacoma, Washington. Pursuant to that agreement, Defendants agreed: (1) to pay a $90,000 loan application fee to Crescit; (2) to pay due diligence costs incurred by Crescit in connection with its evaluation and underwriting of the loan application; and (3) to pay a break-up fee of one percent of the loan amount in the event that Crescit approved the loan but the Defendants did not proceed with financing through Crescit.

1

2. Crescit ultimately approved a loan in the amount of $12 million after incurring $139,914.24 in due diligence costs. Defendants, however, did not accept or close the loan. Instead, they sold the property to a third party for a reported $24.3 million.

3. To date, Defendants have refused to honor their monetary obligations under the loan application agreement. Defendants currently owe Crescit at least $244,914.24, exclusive of costs and interest, representing the outstanding portion of the application fee, the balance of expenses incurred by Crescit for its review and investigation for approving the loan, and the break-up fee. This lawsuit seeks to recover that amount.

**PARTIES, JURISDICTION, AND VENUE**

4. Plaintiff Crescit Mortgage Capital, LLC, is a Delaware limited liability company with its principal place of business in New York City, New York.

5. Defendant Emerald Bay Apartments, LLC, is a Washington limited liability company with its principal place of business in Washington State. On information and belief, its sole member is Christopher S. Robison, a citizen of Washington State.

6. Defendant Christopher S. Robison is the manager of Emerald Bay Apartments, LLC. On information and belief, he is a United States citizen domiciled in Washington State.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Crescit and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendants because Defendants agreed in writing to submit to the jurisdiction of this Court.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District and Defendants consented in writing to venue in this District.

10. Pursuant to the contract that is the subject of this dispute, New York law governs this dispute and the parties have waived a jury trial.

**FACTS**

11. On or about February 1, 2022, Crescit provided Defendants with an offer and loan application for a $14 million mortgage loan on an 82-unit apartment complex owned by Defendant Emerald Bay and located at 1624 East 32nd Street in Tacoma, Washington.

12. On February 7, 2022, Defendants accepted the loan proposal. Robison signed the loan application agreement (the "Agreement") on behalf of Emerald Bay as its manager.

13. When it became apparent that two of the proposed guarantors listed on the loan application would be unable to serve in that capacity, Crescit notified Defendants that it would be willing to proceed with the application provided that the loan amount was reduced to $12 million. Defendants agreed.

14. Emerald Bay and Robison are both Sponsors under the terms of the Agreement. Robison is a Guarantor under the terms of the Agreement.

15. Under the terms of the Agreement, Emerald Bay was authorized to bind the Sponsors (including any Guarantor) to the terms of the loan application.

16. The Agreement provided that Defendants would be responsible for paying a $90,000 application fee: "Upon Borrower's submission of this executed Loan Application Borrower shall deposit with Lender a non-refundable Application Fee in the amount of $90,000. Borrower agrees that the Application Fee shall be earned by Lender upon delivery of the Application Fee."

17. The Agreement further provided that Defendants would be responsible for costs incurred by Crescit in connection with its evaluation and underwriting of the loan application:

> Upon Borrower's submission of this executed Loan Application Borrower shall deposit with Lender a processing deposit in the amount of $90,000 which amount shall, among other things, be used to pay for third party costs including but not limited to appraisals, environmental reviews, engineering property condition/construction reviews, insurance reviews and legal fees[.] Borrower and Guarantor shall remain jointly and severally liable to Lender to the extent expenses exceed the amount of such deposit[]. . . .

18. In short, pursuant to the Agreement, Defendants agreed to be liable to Crescit for any unpaid loan application fee amounts and any due diligence costs that were not covered by its deposit.

19. Upon executing the Agreement, Defendants wired Crescit $105,000 in payment toward the loan application fee and the processing deposit. Defendants have made no further payments to Crescit.

20. In exchange for receipt of the deposited funds and Defendants' assumption of their other contractual obligations, Crescit agreed to obtain title insurance policies and conduct due diligence for underwriting the loan, including engaging legal counsel, hiring appraisal, environmental, insurance, and engineering services, carrying out a zoning study, and conducting credit and background checks. Crescit carried out those responsibilities.

21. The Agreement further provided that, in exchange for Crescit's agreement to "devot[e] resources to the underwriting and analysis of the Loan at the exclusion of other business opportunities," Defendants would pay Crescit a break-up fee in the event that Crescit approved the loan but Defendants declined to finance through Crescit:

> If the Loan is approved by Lender's Credit Committee and those terms are materially similar to those set forth herein and such terms are unacceptable to the Borrower, Borrower shall notify Lender and the Loan Application shall terminate and all costs and expenses incurred by Lender including any unpaid Application Fee[ and] legal fees shall be paid by the Applicant, and the Break-Up Fee shall be payable to Lender.

22. The Agreement fixed the break-up fee "in the amount of one percent (1.0%) of the Loan Amount," and provided that it would "constitute liquidated damages" as "a reasonable estimate of the Lender's damages."

23. Defendants and Crescit intended to be bound by the Agreement and the parties agreed to all essential terms. The Agreement is a valid, binding contract.

24. Defendants understood and agreed that Crescit was devoting resources to the underwriting and analysis of the loan at the exclusion of other business opportunities.

25. Under the terms of the Agreement, Defendants agreed to be liable to Crescit for any unpaid loan application fee amounts and any due diligence costs that were not covered by its deposit. If Crescit approved the loan but Defendants did not accept the loan and close, Defendants would also be liable for the break-up fee.

26. Crescit performed its obligations under the Agreement and approved the loan. Crescit incurred $139,914.24 in due diligence costs in the course of its performance.

27. After the loan was approved, Defendants did not accept or close the loan. Instead, Defendants sold the property to a third party for a reported price of $24.3 million.

28. Pursuant to the Agreement, Defendants were therefore liable to pay Crescit any unpaid application fee, all costs and expenses incurred by Crescit, and the one percent break-up fee. Based on the loan amount of $12 million, the one percent break-up fee was $120,000.

29. Defendants owe Crescit at least $244,914.24, exclusive of interest and costs. This figure represents the unpaid portion of the application fee, the balance of expenses incurred by Crescit for its review and investigation for approving the loan, and the break-up fee, as follows:

| | |
|---|---|
| Application fee: | + $90,000.00 |
| Due diligence expenses: | + $139,914.24 |
| Break-up fee: | + $120,000.00 |
| Deposited funds: | - $105,000.00 |
| Total amount owed: | $244,914.24 |

30. Under the terms of the Agreement, Defendants are jointly and severally liable for the amount owed.

31. Defendants have refused to pay Crescit the amount owed.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

32. Crescit re-alleges the above paragraphs as if fully stated herein.

33. Crescit and Defendants entered into a contract whereby Crescit agreed to conduct due diligence in order to underwrite a mortgage loan to Defendants and Defendants agreed to pay the application fee and expenses incurred in connection with completion of the due diligence, as well as a break-up fee if Defendants did not accept the loan.

34. Defendants materially breached the contract by refusing to pay the full application fee, the full costs of due diligence, or the break-up fee after not closing on the loan.

35. Although Crescit has demanded payment, Defendants have failed and refused to pay the sum owed and the amount remains unpaid.

36. Crescit has been damaged by Defendants' breach and is entitled to recover at least $244,914.24.

## SECOND CLAIM FOR RELIEF
(Breach of Covenant of Good Faith and Fair Dealing)

37. Crescit re-alleges the above paragraphs as if fully stated herein.

38. Implied in all contracts governed by New York law is a covenant of good faith and fair dealing, which obligates the parties to act in good faith, to use their best efforts to deal fairly with one another, and to avoid impeding the other party from obtaining the benefits of the contract.

39. Pursuant to the Agreement, Defendants "agree[d] to cease all discussions with any other financing sources and to work solely with Lender to procure the Loan for the Property" and further "agree[d] not to . . . obtain or attempt to arrange a financing for the Property with any party other than Lender."

40. On information and belief, Defendants improperly engaged in discussions with third parties regarding the financing and/or sale of the property during the contractual period, while at the same time assuring Crescit that they intended to proceed with the mortgage financing.

41. As a result, while Crescit expended substantial sums to conduct due diligence, Defendants ultimately declined the mortgage loan approved by Crescit, instead selling the property to a third party for a reported price of $24.3 million. Defendants also refused to pay Crescit the amounts it was due under the Agreement.

42. By their conduct, Defendants breached the covenant of good faith and fair dealing and wrongfully deprived, impaired, and injured Crescit's enjoyment of the rights, benefits, and full value and fruits of the Agreement despite Crescit's performance of all of its contractual obligations.

43. Crescit has been damaged by Defendants' breach of the covenant of good faith and fair dealing and is entitled to recover at least $244,914.24.

### THIRD CLAIM FOR RELIEF
(*Quantum Meruit*)

44. Crescit re-alleges the above paragraphs as if fully stated herein.

45. Before and during the pendency of the Agreement and at the request of Defendants, Crescit in good faith provided services and devoted resources to Defendants, including processing the loan application, obtaining title insurance, and carrying out due diligence relating to the analysis and underwriting of the loan. Crescit's provision of those services was at the exclusion of other business opportunities.

46. Defendants accepted those services freely.

47. Crescit reasonably expected to receive compensation from Defendants for those services.

48. The reasonable value of those services, net of the amount already deposited by Defendants, is approximately $244,914.24.

49. Although Crescit has demanded payment, Defendants have failed and refused to pay that sum and the amount remains unpaid.

50. Crescit has been damaged by Defendants' non-payment and is entitled to recover at least $244,914.24.

### FOURTH CLAIM FOR RELIEF
(**Unjust Enrichment**)

51. Crescit re-alleges the above paragraphs as if fully stated herein.

52. Before and during the pendency of the Agreement, Crescit, at its own expense, provided services and devoted resources to Defendants, including processing the loan application, obtaining title insurance, and carrying out due diligence relating to the analysis and underwriting of the loan. As a result of those efforts, Crescit conferred an additional benefit on Defendants in the form of its approval of a $12 million mortgage loan.

53. Under these circumstances, equity and good conscience demand that Defendants give restitution for their receipt of the benefits that Crescit conferred, in the amount of the reasonable value of the services.

54. The reasonable value of those services, net of the amount already deposited by Defendants, is approximately $244,914.24.

55. Although Crescit has demanded payment, Defendants have failed and refused to pay that sum and the amount remains unpaid.

56. Crescit has been damaged by Defendants' non-payment and is entitled to recover at least $244,914.24.

**FIFTH CLAIM FOR RELIEF**
**(Declaratory Judgment)**

57. Crescit re-alleges the above paragraphs as if fully stated herein.

58. A real and justiciable controversy exists as to the rights and legal relations of the parties under the Agreement appropriate for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

59. The Agreement requires Defendants to pay Crescit an application fee, reimburse Crescit for its expenses incurred with the Defendants loan application, and pay Crescit a break-up fee and legal fees.

60. Crescit has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Agreement.

61. Because this is a justiciable controversy under Rule 57 of the Federal Rules of Civil Procedure, Crescit is entitled to a speedy hearing and a declaration that Defendants are required to pay Crescit for the amount it owes pursuant to the Agreement, including amounts owed for due diligence expenses, as well as the break-up fee and Crescit's legal fees to enforce the terms of the contract.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Crescit Mortgage Capital, LLC respectfully request that the Court enter judgment against the Defendants as follows:

(a) On the First Claim for Relief, for an award of compensatory damages against Defendants in the amount of $244,914.24;

(b) On the Second Claim for Relief, for an award of compensatory damages against Defendants in the amount of $244,914.24;

(c) On the Third Claim for Relief, for an award of compensatory damages against Defendants in the amount of $244,914.24;

(d) On the Fourth Claim for Relief, for an award of compensatory damages against Defendants in the amount of $244,914.24;

(e) On the Fifth Claim for Relief, for a declaration that Defendants must pay Crescit the fees and reimbursements required by the Agreement, including legal fees incurred in enforcing Defendants' obligations;

(f) For pre-judgment and post-judgment interest at the maximum legal rate;

(g) For Crescit's costs and reasonable attorney's fees; and

(h) For any such other and further relief as this Court may deem just and proper.

Dated: December 4, 2022

Respectfully submitted,

**REICH & PAOLELLA LLP**

/s/ Christopher J. Paolella
Christopher J. Paolella (CP-3061)
111 Broadway, Suite 2002
New York, New York 10006
Tel: 212-804-7090
Fax: 212-804-7095
cpaolella@reichpaolella.com
*Counsel for Plaintiff Crescit Mortgage Capital, LLC*